**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **RODNEY C. COMPTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:24-00230** |
| | ) | |
| **J. CONNER, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On May 3, 2024, Plaintiff, acting *pro se*,[1] filed his Complaint pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 2.) As Defendants, Plaintiff names the following: (1) J. Conner, SHU Property Correctional Officer at FCI Beckley; (2) A. Ross, SHU One Correctional Officer at FCI Beckley; and (3) FCI Beckley. (Id., pp. 1 – 3.) Plaintiff alleges he was subjected to an attack by another inmate, but the correctional officer failed to instruct that inmate to "stop" or attempt to "stop" the fight. (Id., pp. 5 – 6.) Plaintiff, however, acknowledges that the correctional officer called out "fight, fight, fight" and responded by using pepper spray. (Id.) Plaintiff alleges that Defendant Conner failed to follow SHU procedure, which resulted in the other inmate obtaining an object that was used as a weapon against Plaintiff. (Id.) Plaintiff further complains that he was subjected to disciplinary proceedings regarding the above incident resulting in a loss of good time credit.[2] (Id.) As Exhibits, Plaintiff attaches a copy of pertinent

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] To the extent Plaintiff is challenging the validity of his disciplinary hearing and the loss of his

administrative remedies. (Document No. 2-1.)

Based on the foregoing, it was unclear from Plaintiff's allegations whether he was asserting the above conduct resulted in a violation of his constitutional rights or whether he was attempting to assert a tort claim. Specifically, the undersigned found that it was unclear as to whether Plaintiff was asserting (1) a tort claim pursuant to the FTCA, (2) a Bivens claim for alleged violations of his constitutional rights, or (3) both. By Order entered on December 31, 2024, the undersigned directed Plaintiff to file an Amended Complaint specifically identifying whether he is asserting a claim under the FTCA, Bivens, or both. (Document No. 10.) On January 24, 2025, Plaintiff filed his Amended Complaint. (Document No. 11.) As Defendants, Plaintiff names the following: (1) J. Conner, SHU Property Correctional Officer at FCI Beckley; and (2) A. Ross, SHU One Correctional Officer at FCI Beckley. (Id., p. 2.) Plaintiff alleges that the above Defendants acted with deliberate indifference to his safety in violation of the Eighth Amendment by failing to intervene and protect Plaintiff from an attack by a fellow inmate. (Id., p. 4.) Specifically, Plaintiff states as follows:

> On 10-22-23, Correctional Officer J. Conner gave Inmate Rivera Diaz # 32598-089 eyeglasses out of his property in the SHU at FCI Beckley. [Inmate] Rivera made a knife out of them and stabbed me in the face with the. Correctional Officer A. Ross gave other correctional officers instruction to lie and cover up what happen by telling them to writ an Incident Report for a 201 and that they are not to say nothing about the knife they found or about the stabbings. I am asserting this claim under Bivens for letting an inmate retrieve an object to make a knife and giving instructions to cover up evidence. These Correctional Officers have violated my Eighth Amendment rights.

(Id.) As relief, Plaintiff requests monetary relief. (Id.)

**STANDARD**

---

good time credit, an award of good time credit is not an available remedy in either *Bivens* or the FTCA.

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. This screening is done prior to consideration of an Application to Proceed Without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal

construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

**ANALYSIS**

**A. Challenge Concerning Plaintiff's Disciplinary Hearing:**

In his Complaints, Plaintiff indicates that he received an Incident Report for fighting based upon the attack by the fellow inmate. (Document Nos. 2 and 11.) Plaintiff complains that he lost good time credit as a result of this Incident Report. (Id.) Plaintiff appears to assert that he was denied due process because Defendants lied and falsified evidence to support the Incident Report.[3] (Id.)

---

[3] To the extent Plaintiff alleges that the disciplinary charges were false, such does not state a constitutional claim. It is well-established that the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2nd

In Heck v. Humphrey, 512 U.S.477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) the Supreme Court established the following test to determine whether a prisoner's claim for violation of due process in the context of a criminal proceeding is cognizable under 42 U.S.C. § 1983.

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck, 512 U.S. at 487, 114 S.Ct. at 2372-73; see also Poston v. Shappert, 222 Fed.Appx. 301 (4th Cir. 2007)(applying *Heck* rationale to bar claims for damages under Section 1983 and *Bivens*); Messer v. Kelly, 129 F.3d 1259 (4th Cir. 1997)(stating that the rationale in *Heck* applies in *Bivens* actions).

---

Cir. 1986)("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."); *McClary v. Fowlkes*, 2008 WL 3992637, *4 (E.D.Va. 2008)(finding inmate has no constitutional right against being falsely accused of conduct that may result in deprivation of protected liberty interest); *Rhodes v. Sterling*, 475 F.Supp.3d 470 (D.S.C. July 30, 2020)(allegations that false disciplinary charges were brought were insufficient to state a Section 1983 claim); *Jenkins v. Bittinger*, 2016 WL 11410971, * 2 (D.S.C. Oct. 17, 2016)("Plaintiff has no actionable constitutional claim against either [defendant] based on his allegations of their filing 'false' disciplinary charges.").

The Supreme Court applied the Heck rule to prison disciplinary proceedings in Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), when it held that, in the context of prison disciplinary hearings that result in the loss of good-time credits, challenges to prison hearing procedures which necessarily imply the invalidity of the judgment must be pursued in *habeas corpus*, not in a Section 1983 action. In Balisok, the inmate alleged that he was denied the opportunity to put on a defense due to the deceit and bias of the hearing officer. The Court held "that [Balisok's] claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Edwards, 520 U.S. at 648, 117 S.Ct. at 1589. Accordingly, the undersigned proposes that the District Court find (1) that Plaintiff alleges that he was denied due process in connection with his prison disciplinary hearing, (2) that his contentions imply the invalidity of the disciplinary hearings and the review and appeal process, (3) that there has been no invalidation of the disciplinary hearing, and (4) that his claim is therefore barred.[4]

**B. Extension of Bivens:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison

[4] The undersigned further notes that prisoner disciplinary proceedings are not part of criminal prosecution. Thus, the full panoply of rights due a defendant in criminal proceedings do not apply in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)("there must be mutual accommodation between institutional needs and objective and the provisions of the Constitution"). Inmates, however, are entitled to the following procedural safeguards during disciplinary hearings: (1) advance written notice to the inmate of the claimed violation; (2) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders of the evidence relied on and the reasons for the disciplinary action. *Id.*, at 563 - 66. If Plaintiff believes he was denied any of the above procedural safeguards, Plaintiff should file an Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody.

inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05. A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. Bivens core premise is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999; Hernandez v. Mesa, 589 U.S. 93, 140 S.Ct. 735, 741, 206 L.Ed.2d 29 (2020)(In *Bivens*, "the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents.") In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment for a claim of sex discrimination, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment for a prisoner's claim of inadequate medical care, Carlson v. Green, 446 U.S. 14,

100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. See Egbert v. Boule, 596 U.S. 482, 486, 142 S.Ct. 1793, 1799-80, 213 L.Ed.2d 54 (2022)(noting that the Supreme Court has declined 11 different time to imply similar causes of actions in the years since *Bivens* was decided); FDIC v. Meyer, 510 U.S. at 484-86, 114 S.Ct. 996(declined to extend Bivens to permit suit against a federal agency); also see Bulger v. Hurwitz, 62 F.4th 127, 138 (4th Cir. March 3, 2023)(rejecting request to extend *Bivens* to a prisoner's Eighth Amendment failure to protect and intervene claims against BOP officials); Dyer v. Smith, 56 F.4th 271, 275 (4th Cir. 2022)(declining request to extend *Bivens* to claims against Transportation and Security Administration officers for violations of the First and Fourth Amendments); Tate v. Harmon, 54 F.4th 839, 841-42 (4th Cir. 2022)(rejecting request to extend *Bivens* to conditions of confinement claim under the Eighth Amendment); Annappareddy v. Pascale, 996 F.3d 120, 126 (4th Cir. 2021)(declining to extend *Bivens* to claims against federal prosecutors and investigators for violations of the Fourth and Fifth Amendments); Earle v. Shreves, 990 F.3d 774, 776 (4th Cir. 2021)(rejecting request to extend *Bivens* to claims of unlawful retaliation by prison officials for filing grievances in violation of the First Amendment); Tun-Cos v. Perrotte, 922 F.3d 514, 517-18 (4th Cir. 2019)(declining to extend *Bivens* to claims of unlawful searches and seizures by Immigration and Customs Enforcement agents in violation of the Fourth and Fifth Amendments); Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend *Bivens* to an Eighth Amendment claim against employees of a privately operated prison); Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012)(declining to extend *Bivens* in a military context). In 2017, the Supreme Court made clear the very limited scope of Bivens actions and that

"expanding the Bivens remedy is now a disfavored judicial activity." Ziglar v. Abbasi, 582 U.S. 120, 134, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted Bivens claim is not one of the three Bivens-type actions previously recognized by the Supreme Court, closer scrutiny is required. Id. More recently, the Supreme Court in Egbert noted "[n]ow long past the heady days in which this Court assumed common-law powers to create causes of action [such as Bivens], we have come to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." Egbert, 596 U.S. at 490, 142 S.Ct. at 1802(internal citations omitted). The Supreme Court stated that "[i]n both statutory and constitutional cases, our watchword is caution." Hernandez, 589 U.S. at 100, 140 S.Ct. at 742; Tate, 54 F.4th at 844(stating that the Supreme Court's "recent admonitions are clear: '[T]he Judiciary's authority to [create a cause of action under the Constitution] is, at best, uncertain,' . . . ; courts must beware of 'arrogating legislative power'. . .; and 'our watchword is caution,'. . .")(internal citations omitted). The Supreme Court explained that "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress, . . . and no statute expressly creates a *Bivens* remedy." Hernandez, 589 U.S. at 100, 140 S.Ct. at 742; also see Egbert, 596 U.S. at 502, 142 S.Ct. at 1809("[M]ore recently, we have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.")

Although the Supreme Court called into doubt the validity of the "implied rights" in Bivens, the Supreme Court did not overturn Bivens. Id. The Supreme Court, however, "impose[d] a highly restrictive analysis for Bivens cases by (1) narrowing the precedential scope of Bivens, Davis, and Carlson and (2) imposing a broad standard of criteria that, if satisfied,

require courts to reject any expansion of Bivens remedies." Tate, 54 F.4th at 844. The Supreme Court explained that when asked to extend Bivens, a Court should engage in a two-step inquiry. Hernandez, 489 U.S. at 101, 140 S.Ct. at 743. First, the Court should inquire "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" Id.(citation omitted). The Supreme Court clarified that its "understanding of a 'new context' is broad," thereby requiring the scope of the exiting Bivens causes of action to be narrowly construed. Id. Second, if a claim is found to arise in a new context, the Court should inquire "whether there are any 'specific factors [that] counsel hesitation' about granting the extension." Id.(quoting Abbasi, 582 U.S. at 135, 137 S.Ct. at 1857); also see Greenpoint Tactical Income Fund LLC v. Pettigrew, 38 F.4th 555, 561 (7th Cir. 2022)(The two-part test used post-*Abbasi* to evaluate claims under *Bivens* remains the same after *Egbert*); Feao v. Ponce, 2023 WL 3213553 (C.D.Cal. March 3, 2023)(Although *Egbert* indicates that existence of "special factors" can itself create a new context, the court rejected defendants' argument that *Egbert* had the effect of collapsing the inquiry altogether and dispensing with the "next context" inquiry).

In Abbasi, the Supreme Court set out a framework for determining whether a claim presents a "new Bivens context." Abbasi, 582 U.S. at 140, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a Bivens remedy in only three cases: (1) A Fourth Amendment claim against agents of the Federal Bureau of Narcotics for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. Id. at

1854-55(citations omitted). The Abbasi Court explained that "[i]f the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In Tate, the Fourth Circuit recognized that a single fact distinguishing a case from Bivens, Davis, and Carlson, potentially can create a "new context." Tate, 54 F.4th at 846.

Liberally construing Plaintiff's Complaints, Plaintiff appears to argue that Defendants violated his Eighth Amendment rights by failing to intervene to prevent an inmate from possessing eyeglasses that could be converted into a weapon and failing to protect Plaintiff from an attack by this inmate. (Document Nos. 2 and 11.) Thus, the undersigned first considers whether Plaintiff's Eighth Amendment claims concerning failure to intervene and failure to protect constitutes an improper extension of Bivens. Although the Supreme Court has recognized an implied right of action for an Eighth Amendment claim based on deliberate indifference to serious medical needs in Carlson, the Supreme Court has never held that Bivens extends to a claim for failure to protect or failure to intervene. The Fourth Circuit recently considered the foregoing and determined that a prisoner's Eighth Amendment failure to protect and intervene claims presented a "new context." Bugler v. Hurwitz, 62 F.4th 127, 138 (4th Cir. 2023)(finding

plaintiff's claims of failure to intervene and failure to protect from prisoner-on-prisoner violence were claims "not authorized by *Carlson* but instead present a new context"); also see Fisher v. Hollingworth, 115 F.4th 197, 206 (3rd Cir. 2024)(finding an inmate's Eighth Amendment failure-to-protect claim is a new context); Sargeant v. Barfield, 87 F.4th 358, 364-69 (7th Cir. 2023)(same); Chambers v. Herrera, 78 F.4th 1100, 1105-07 (9th Cir. 2023)(same). As the Third Circuit explained in Fisher, an Eighth Amendment claim for failure to provide medical treatment differs meaningfully from an Eighth Amendment claim for failure to prevent inmate-on-inmate assault. Fisher, 115 F.4th at 206. Specifically, the Third Circuit explained as follows:

> Unlike a failure-to-treat claim, a failure-to-protect claim seeks to impose liability on prison officials who fail to control the behavior a third parties. Preventing inmate-on-inmate assault requires keeping dangerous inmates apart from the targets of their violence. Decisions about the placement and transfer of inmates involve different concerns than decisions about the treatment of diseases like asthma. And a cause of action for failure to protect from inmate-on-inmate violence is likely to have different "systemwide consequences" than *Carlson's* cause of action for failure to provide medical treatment. So this case differs from *Carlson* in meaningful ways.

Id. Based upon the foregoing, the undersigned finds that Plaintiff's failure to intervene and protect claims present a new Bivens context.

Next, the Court must determine whether Bivens should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." Abbasi, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); Malesko, 534 U.S.

at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new Bivens remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. The undersigned finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program. See Bulger, 62 F.4th at 140-41(finding that the existence of alternative remedial structure under the BOP's Administrative Remedy Program counseled against extending *Bivens*); Fisher, 115 F.4th at 208("[T]he BOP's Administrative Remedy Program precludes a *Bivens* remedy.") The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. Finally, the Federal Tort Claims Act authorizes claims for damages against the United States for certain intentional torts committed by federal officers.[5]

---

[5] An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA, however, does not create a new cause of action. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.* Thus, the FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. *See* 28 U.S.C. § 2675(a); *also see Bellomy v. United States*, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994)(*citing Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *Muth v. United States*, 1 F.3d 246 (4th Cir. 1993); *Gibbs v. United States*, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency. *See Plyer v. United States*, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). The Fourth Circuit has also recognized that "[a]n administrative claim must be properly presented." *Kokotis v. United States Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000). In the above action, there is no allegation or indication that Plaintiff satisfied the requirement of presenting an administrative claim for a sum certain to the proper agency. A liberal review of Plaintiff's Amended Complaint reveals only allegations of personal liability against Defendants for violations of Plaintiff's Eighth Amendment rights.

See Millbrook v. United States, 569 U.S. 50, 54 – 57, 133 S.Ct. 1441, 185 L.Ed2d 531 (2013); also see Ball, 655 F.Supp.3d at 443-44(explaining that the FTCA offers an alternative remedy for "certain intentional torts committed by federal officers, including assault and battery").

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S.Ct. at 1857(quoting Carlson, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. at 1865. The Abassi Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." Id. The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

Id. The PLRA's exhaustion requirement clearly applies to Bivens actions. Porter v. Nussle, 534

---

Furthermore, the undersigned directed Plaintiff to file an Amended Complaint clarifying whether he was asserting a *Bivens* claim, FTCA claim, or both. Plaintiff filed his Amended Complaint specifically stating he was asserting only a *Bivens* claim.

U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." Jones v. Bock, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259. Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's sexual assault claim. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same); Ball, 655 F.Supp.3d at 443-45(explaining that special factors counselled hesitation in recognizing a new cause of action under *Bivens* for sexual assault claims).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on

Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." Wilkie, 551 U.S. at 562, 127 S.Ct. 2588(quoting Bush, 462 U.S at 389, 103 S.Ct. 2404). In Abbasi, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

Abbasi, 137 U.S. at 1856. The undersigned notes that expanding Bivens to allow an Eighth Amendment failure to intervene or protect claim would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of Bivens to an Eighth Amendment failure to intervene or protect claim. See Bulger, 62 F.4th at 140(finding "multiple special factors counsel against creating a new *Bivens* remedy" concerning an inmate's failure to intervene and protect claim); also see Greene, 2022 WL 13638916, * at 4; C.J., 2023 WL 3854056, * at 2; Berry, 2023 WL 2424181, * at 5 - 6; Ball, 655 F.Supp.3d at 443-45; Carthen, 2023 WL 346675, * 6 – 8. Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief cannot be granted concerning his Eighth Amendment failure to intervene and protect claim.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Plaintiff's Complaints (Document Nos. 2 and 11), and **REMOVE** this matter from the docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: February 7, 2025.

Omar J. Aboulhosn
United States Magistrate Judge